```
                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF TEXAS
                         FORT WORTH DIVISION

DEEPKALA GOLDBERG                  §
                                   §
VS.                                §   CIVIL ACTION NO. 4:09-CV-700-Y
                                   §
CUSHMAN & WAKEFIELD NATIONAL       §
CORPORATION, et al.                §
```

ORDER DENYING MOTION TO DISMISS

Before the Court is Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) (doc. 20). In the motion, Defendants ask the Court to dismiss plaintiff Deepkala Goldberg's claims for relief under the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C.A. §§ 1132, 1140 (West 2010). After review, the Court concludes that Mrs. Goldberg has stated a claim for relief based on § 510 of ERISA, which allows her to pursue the relief prescribed in § 502. The Court will, therefore, deny Defendants' motion to dismiss.

I. Background

Scott Goldberg was employed by defendant Cushman & Wakefield National Corporation ("Cushman & Wakefield"). As part of his employment, Mr. Goldberg was insured under a company-sponsored life-insurance policy ("the Policy"), and he named Mrs. Goldberg as the beneficiary. Under the Policy, Mrs. Goldberg was to receive a $500,000 payout upon Mr. Goldberg's death.

In November 2007, Mr. Goldberg learned that he needed a heart transplant. Shortly thereafter, he informed his supervisor of his

need to take leave under the Family Medical Leave Act ("FMLA"). According to the complaint, just a few days after this conversation, Mr. Goldberg's direct supervisor falsely accused him of violating company policies by sending personal emails that contained company-related information. Compl. ¶ 11. The complaint further states that an upper-level supervisor placed Mr. Goldberg on suspension pending an investigation into this matter. Compl. ¶ 14. As part of this investigation, both supervisors met with Mr. Goldberg after he had been placed on administrative leave and "continued to harangue him" about his alleged violation of company policies. Compl. ¶ 16.

Mr. Goldberg underwent the anticipated heart-transplant procedure in January 2008. In the complaint, it is alleged that, while Mr. Goldberg was still in the hospital, he received a letter from a Cushman & Wakefield representative that contained a number of conclusions concerning the investigation into his alleged company-policy violations. Compl. ¶ 17. Among other things, the letter informed Mr. Goldberg that he was not to return to the facility at which he had previously worked for any reason, and that the company would try to find him a position at another facility once he returned from administrative leave. Compl. ¶ 17-18.

After receiving clearance from his doctor, Mr. Goldberg informed Cushman & Wakefield of his desire to return to work. According to the complaint, there were a number of positions

available within the company. Compl. ¶ 21. Nevertheless, Cushman & Wakefield terminated Mr. Goldberg's employment, stating that there were no positions open. Shortly after his termination, Mr. Goldberg died from complications due to the surgery.

Both parties agree that when Cushman & Wakefield terminated Mr. Goldberg's employment, he lost his right to participate in the company-sponsored insurance plan. As a result, Mrs. Goldberg was not covered by the Policy at the time of Mr. Goldberg's death and, therefore, was not eligible to receive the $500,000 payout.

Consequently, Mrs. Goldberg filed this lawsuit alleging violations of the FMLA and ERISA. Defendants' motion only seeks dismissal of her ERISA claims. Thus, the Court will limit its analysis accordingly.

II. Legal Standards

A. Rule 12(b)(6)

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate when a complaint fails "to state a claim upon which relief can be granted." Rule 8(a), however, which states the requirements for pleading a claim for relief in federal court, simply calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding Rule 8(a)'s simplified pleading standard applies to most civil actions).

Consequently, "[a] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (quoting Wright & Miller, *Federal Practice and Procedure* § 1357 (1969)). The Court must liberally construe the complaint in favor of the plaintiff, accepting as true all well-pleaded, non-conclusory allegations. *Kaiser Aluminum*, 677 F.2d at 1050.

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). This requires that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face," and his "factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 555 (2007). The Court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action." *Id.* at 1955. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

B. Rule 12(c)

Defendants' motion to dismiss is technically untimely because it was filed after Defendants' respective answers (docs. 14, 7).

4

However, a court may treat an untimely Rule 12(b)(6) motion as a Rule 12(c) motion for judgment on the pleadings for failure to state a claim. *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). Resolution of Defendants' motion depends solely upon issues of law, which the parties have fully briefed. Therefore, because Defendants raised each of their Rule 12(b)(6) arguments in their answers, the Court will construe Defendants' motion as one filed under Rule 12(c). The standards for the two types of motions are the same. *See Mayne v. Omega Protein, Inc.*, 370 F. App'x 510, 514 (5th Cir. 2010).

III. Analysis

   A. ERISA § 510

Section 510, in relevant part, states that, "[i]t shall be unlawful for any person to discharge . . . a participant . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act." 29 U.S.C. § 1140 (2006). Mrs. Goldberg alleges that Defendants violated § 510 by discharging her husband for the purpose of preventing any entitlement to benefits under the Policy.

The complaint contains ample factual allegations to support Mrs. Goldberg's theory. For example, it is alleged that Cushman & Wakefield was aware that Mr. Goldberg needed a heart transplant when it first accused him of violating company policies. According to

5

the complaint, these accusations were false.  One could infer that Cushman & Wakefield made false accusations as part of a plan to fire Mr. Goldberg before his beneficiary became entitled to the life-insurance proceeds.

Furthermore, it is alleged that Cushman & Wakefield made Mr. Goldberg the subject of an investigation even after he was on administrative leave.  In the letter it sent to Mr. Goldberg while he was recovering from his heart-transplant procedure, Cushman & Wakefield relayed its conclusions about the investigation.  These factual allegations could be fairly viewed as showing that Cushman & Wakefield was not only causing Mr. Goldberg severe distress, but also acting with haste to ensure that his employment was terminated prior to his death.

Finally, Mrs. Goldberg alleges that there were several positions available at Cushman & Wakefield when Mr. Goldberg was terminated due to an alleged lack of openings.  This suggests Cushman & Wakefield had predetermined to terminate Mr. Goldberg's employment without any intention of ever finding him a job at a new facility. Based on these allegations, Mrs. Goldberg states a claim for relief based on § 510.

B. ERISA § 502

Section 502, 29 U.S.C. § 1132, is the remedial provision for a violation of § 510.  *See* 29 U.S.C. § 1140 ("The provisions of section 1132 of this title shall be applicable in the enforcement of this section.").  Mrs. Goldberg, thus, seeks to recover the

proceeds of the Policy under § 502(a)(1)(B), which provides, "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). According to Mrs. Goldberg, § 502(a)(1)(B) entitles her to recover the benefits she would have recovered under the Policy but for Defendants' interference in violation of § 510.

Defendants contend that, by its terms, § 502(a)(1)(B) does not address violations of the sort covered under § 510. Rather, according to Defendants, § 510 covers the fact pattern in which a participant or beneficiary has been denied "the attainment of any right to which such participant **may become entitled**." 29 U.S.C. § 1140. Conversely, Defendants assert that § 502(a)(1)(B) contemplates a civil action in which a plan participant or beneficiary seeks to recover under the terms of a plan under which **he already has rights**.

There is substantial case law to support Defendants' position. *See, e.g.*, *Ponsetti v. GE Pension Plan*, No. 09-2430, 2010 WL 2977952, at *10 (7th Cir. July 30, 2010) ("We have previously differentiated between suits under ERISA § 502(a)(1)(B), which we have characterized as essentially a contract remedy under the terms of the plan, from suits under ERISA § 510, actionable through ERISA § 502(a)(3)." (citation omitted)); *Eichorn*, 484 F.3d at 652 (holding that § 502(a)(1)(B) does not provide redress for § 510 interference claims);

7

*Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992)("In order to enforce the terms of a plan under Section 502, the participant must first qualify for the benefits provided in that plan. Rather than concerning itself with these qualifications, one of the actions [that] Section 510 makes unlawful is the interference with a participant's ability to meet these qualifications in the first instance." (citations omitted)).

However, the rule derived from these cases--that § 502(a)(1)(B) does not remedy violations of § 510--is not wholly consistent with § 510's statement that "[t]he provisions of section 1132 [(§ 502 of ERISA)] of this title shall be applicable in the enforcement of this section." *See* 29 U.S.C. § 1140. Section 510 does not exclude subsection (a)(1)(B) from § 502's applicability to § 510. Moreover, this interpretation of § 510's remedial scheme is not without support. *See Zimmerman v. Sloss Equip., Inc.*, 835 F. Supp. 1283, 1290 (D. Kan. 1993) ("The remedies for a violation of ERISA § 510 are those set forth in ERISA § 502(a)(1)(B) and (a)(3)."); Babich v. Unisys Corp., No. 92-1473, 1994 WL 167984, at *3 (D. Kan. Apr. 8, 1994) ("[T]he damages available to an ERISA § 510 plaintiff are found in ERISA's enforcement provision, § 502(a)(1)(B) and (a)(3).") (citing 29 U.S.C. § 1132(a)(1)(B) & (a)(3); *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 392-92 (3d Cir. 1988); *Zimmerman*, 835 F. Supp. at 1290).

Furthermore, while the manner in which the aforementioned courts have read § 502(a)(1)(B) is persuasive as a matter of technical

statutory construction, such a reading produces an absurd result in Mrs. Goldberg's case. According to these courts, § 502(a)(1)(B) does not permit Mrs. Goldberg to recover the proceeds of the Policy because she is no longer eligible under the Policy. Yet, according to Mrs. Goldberg's complaint, the precise reason she is ineligible under the Policy is that Defendants' interfered with and prevented her continued eligibility. Thus, applying the rule of the aforementioned cases to the instant facts, Defendants have avoided liability under the Policy, not in spite of, but because of their interference with Mrs. Goldberg's rights under the Policy in violation of § 510. Had Defendants not interfered, they would be liable under the Policy. Such a result is surely not what Congress intended.

Defendants' interpretation gives potential § 510 defendants little reason to abstain from interfering with the rights of a participant or beneficiary under an ERISA policy. For example, suppose an employer terminates (or conspires with its insurance company to terminate) the employment of a life-insurance-plan participant for the purpose of preventing the participant's beneficiary from recovering proceeds upon the participant's death. Neither the employer nor the insurance company is liable to pay the beneficiary under the policy, despite being responsible for the beneficiary's ineligibility for benefits in the first place. In such a scenario, which mirrors Mrs. Goldberg's case, reinstatement under § 502(a)(3) is not available because the participant is deceased.

Moreover, even if the participant files suit while he is still living, the best a court can do is award "appropriate equitable relief" under § 502(a)(3), which allows for reinstatement of eligibility under the policy, but does not permit recovery for any losses incurred. Thus, under this rule, potential § 510 defendants have nothing to lose when they interfere with the rights of plan participants or beneficiaries.

Consider another example. Suppose a participant of an employer-provided health-insurance plan notifies his employer on November 28 that he must undergo a high-risk medical procedure. Suppose further that on December 1 the participant's employer terminates his employment, thereby rendering him ineligible for health-insurance benefits under the plan. On December 3, the former participant undergoes the medical procedure and incurs $50,000 in medical expenses as a result. Under the interpretation set forth in the aforementioned cases and advanced by Defendants, the former participant states a violation of § 510, but cannot recover the $50,000 incurred while unlawfully rendered uninsured. His only remedy is to seek reinstatement under § 502(a)(3), which does not make him whole. The Court has difficulty with this reading of § 510.

Given that the Fifth Circuit has not addressed this question, the Court concludes that Mrs. Goldberg has stated a § 510 claim and that this claim entitles her to relief under § 502(a)(1)(B). This conclusion is based on § 510's language, which provides that § 502 shall provide a remedy for violations of § 510, and on the inference

that Congress did not intend to leave plaintiffs in Mrs. Goldberg's situation without a remedy. Thus, while Mr. Goldberg was not a participant under the plan at the time of his death, and Mrs. Goldberg was ineligible for benefits at the time of his death, she is nevertheless entitled to pursue relief under § 502(a)(1)(B) on the grounds that, according to her allegations, but for Defendants' violation of § 510, she would have recovered the Policy's proceeds.

IV. Conclusion

Accordingly, Defendants' motion to dismiss is DENIED.

SIGNED September 30, 2010.

                                               TERRY R. MEANS
                                               UNITED STATES DISTRICT JUDGE

TRM/dc